**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| JANET I. GRAHAM, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO.  4:15-CV-793-CAN |
| v. | § | |
| | § | |
| CAROLYN W. COLVIN, ACTING | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| | § | |
| Defendant. | | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this appeal for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") pursuant to 42 U.S.C. § 405(g), denying her claim for disability insurance benefits and supplemental security income benefits [Dkt. 1].  After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the administrative record, the Court finds that the Commissioner's decision should be **REMANDED.**

## BACKGROUND

### I.     PROCEDURAL HISTORY OF THE CASE

On March 4, 2013, Janet I. Graham ("Plaintiff") filed her application for disability income benefits ("DIB"), and on April 11, 2013, she subsequently filed an application for supplemental security income ("SSI") benefits, under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1382c [TR at 173, 175].  In both applications, Plaintiff alleged an onset of disability date of November 26, 2012 due to cataracts, sleep apnea, high blood pressure, chronic obstructive pulmonary disease ("COPD"), and constant pain in her knees.  *Id.* at 173-180, 219.  On January 10, 2014, an Administrative Law Judge ("ALJ") issued a fully favorable decision finding

Plaintiff disabled. *Id.* at 88-97. The Appeals Council later vacated this decision and remanded the claim on April 15, 2014. *Id.* 98-102. Upon remand, an administrative hearing was held on September 11, 2014, at which Plaintiff, her Attorney, and vocational expert Lakedra L. Parker ("VE") were all present. *Id.* at 32-47. After reviewing the evidence and testimony, the ALJ issued his decision on October 17, 2014, concluding Plaintiff was not disabled at step four of the prescribed sequential evaluation process (discussed *infra*). *Id.* at 18-31. On December 16, 2014, Plaintiff requested review before the Appeals Council. *Id.* at 16-17. The Appeals Council denied review on October 9, 2015, making the ALJ's decision the final decision of the Commissioner pursuant to U.S.C. § 405(g). *Id.* at 1-7.

On November 13, 2015, Plaintiff filed her Complaint [Dkt. 1]. The Court received the Administrative Record from the Social Security Administration ("SSA") on March 7, 2016 [Dkt. 10]. On March 16, 2016, this case was assigned to the undersigned by consent of all Parties for further proceedings and entry of judgment [Dkt. 12]. Plaintiff filed her Brief on April 5, 2016 [Dkt. 14], and the Commissioner filed a Brief in Support of the Commissioner's Decision on June 6, 2016 [Dkt. 15]. Plaintiff filed a response to the Commissioner's Brief on June 16, 2016 [Dkt. 16].

## II.     STATEMENT OF RELEVANT FACTS

### A.     *Age, Education, and Work Experience*

Plaintiff was born on January 20, 1954, making her fifty-nine (59) years of age at the time she filed her applications [TR at 173]. Plaintiff asserts that her onset date of disability is November 26, 2012. *Id.* at 173, 175. Plaintiff was an individual or person of advanced age at all times relevant to her application. *See* 20 C.F.R. § 416.963(d). She completed high school and one

year of college [TR at 220]. Her past relevant work history includes employment as an admitting clerk, a switchboard operator, and a telemarketer. *Id.* at 46, 220.

### B. Relevant Medical Record Evidence

Plaintiff's impairments include the following: obstructive sleep apnea, COPD, degenerative joint disease of the knees, degenerative joint disease of her knees bilaterally, degenerative disc disease, obesity cardiomegaly, and osteoarthritis of the knees bilaterally. *Id.* at 23. At issue herein is Plaintiff's exertional and nonexertional limitations, and whether such limitations permit a finding that Plaintiff is capable of the full range of sedentary activity. On appeal, Plaintiff alleges that the ALJ failed to explain the weight given to examining physician Dr. Robert Newberry (who identified a number of nonexertional limitations), and that the ALJ failed to consider all of the limitations identified by Dr. Newberry. Plaintiff also references the limitations discussed by non-examining State agency consultants Drs. Durfor and Harper. As such, the Court primarily focuses its explication of the medical record evidence on these sources, and only briefly outlines Plaintiff's treating sources.

### 1. Treating Sources – Drs. Jelsma and McDonald

The record contains medical opinions concerning Plaintiff from two treating sources: Drs. Richard D. Jelsma ("Dr. Jelsma"), and Shawn McDonald ("Dr. McDonald"). Dr. Jelsma's treatment records dated January 2, 2004, are the earliest treating source opinions reflected in the record [TR at 317]. Plaintiff initially visited Dr. Jelsma with complaints of left knee pain. *Id.* at 318. Dr. Jelsma found that Plaintiff had some pain with hyperflexion of the knee, and had some tenderness over the medial and lateral joint lines. *Id.* An MRI result indicated a medial meniscal tear in the left knee as well as early degenerative changes. *Id.* Dr. Jelsma reported that Plaintiff suffered from early arthritis, and recommended an arthroscopy for pain relief to be arranged at

Plaintiff's convenience. *Id.* Plaintiff returned to Dr. Jelsma on January 8, 2010, with complaints of bilateral knee pain. *Id*. at 322. Examination revealed a mild varus alignment, with decreased range of motion in the left knee and tenderness over the medial and lateral joint lines and patella. *Id.* X-ray studies showed severe arthritis on the left knee, with bone on bone changes in the medial compartment, and patellar femoral compartment. *Id.* Plaintiff also exhibited some arthritis in the right knee, although not as severe as the left knee. *Id.* Dr. Jelsma offered Plaintiff an injection, although Dr. Jelsma stated that Plaintiff's only option for long-term pain relief would likely be a knee replacement. *Id.* The record reflects that Plaintiff ultimately declined surgery or other intervention due to financial constraints. *Id.* at 326. Plaintiff did not receive additional medical care for her knees until 2013 and/or 2014. *Id.* at 301. Plaintiff underwent further treatment with Dr. Shawn McDonald in 2014 for degenerative joint disease of the knees, COPD, severe arthritis, and feet numbness. *Id.* at 327-29.

### 2. *Examining Source – Dr. Newberry*

On June 29, 2013, Plaintiff was examined by Dr. Robert Newberry ("Dr. Newberry") [TR at 301]. Dr. Newberry reported that Plaintiff alleged disability due to breathing problems and high blood pressure, knee problems and cataracts. *Id*. at 302. Through Plaintiff's examination Dr. Newberry observed "medial tenderness of the bilateral knees," as well as that Plaintiff "was able to lift, carry and handle light objects" and to "rise from a sitting position without assistance," but "was unable to squat and rise from that position." *Id.* at 306.

Dr. Newberry's prognosis, following examination of Plaintiff, is as follows:

> The claimant has pain in her knees as a result of her excessive weight. She also has developed vascular stasis in the lower extremities. The claimant has a cataract in the right eye which apparently is not dense enough to be removed at this time. She has complaints of sleep apnea and COPD which are asymptomatic.

The claimant provided us with her best effort during the examination. The claimant can be expected to sit normally in an 8-hour workday with normal breaks. The claimant has mild limitations with standing and walking due to obesity and knee problems. The claimant does not need an assistive device with regards to short and long distances and uneven terrain. The claimant has mild limitations with lifting and carrying weight due to knee problems. There are no limitations on bending and stooping and the claimant will be able to perform these frequently. There are limitations on crouching and squatting and the claimant will be able to perform these occasionally due to obesity and osteoarthritis. There are no manipulative limitations on reaching, handling, feeling, grasping, fingering and the claimant will be able to perform these frequently. There are no relevant communicative or work place environmental limitations. There may be relevant visual limitations due to decreased right eye visual acuity.

*Id.* at 308.

### 3. State Agency Consultants – Drs. Durfor and Harper

On July 19, 2013, State agency consultant Dr. John Durfor ("Dr. Durfor") completed a Disability Determination Explanation related to Plaintiff's claims [TR at 48-67]. Dr. Durfor found medically determinable impairments of osteoarthritis and allied disorders, and obesity. *Id.* at 51. He found that Plaintiff's impairments could be reasonably expected to produce her pain and other symptoms, but that Plaintiff's statements about the intensity, persistence, and functionally limiting effects of the symptoms were not substantiated by the objective medical evidence alone. *Id.* at 51-52. Dr. Durfor further found that Plaintiff had exertional limitations, including the following: occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk (with normal breaks) for a total of 4 hours, sit (with normal breaks) for a total of about 6 hours in an 8-hour workday, push and/or pull unlimited. *Id.* at 52. He also found postural limitations of climbing ramps/stairs occasionally, climbing ladders/ropes/scaffolds never, balancing frequently, stooping unlimited, kneeling unlimited, crouching frequently, crawling unlimited. *Id.* at 53. The exertional limitations related to standing and walking, as well as the postural limitations were noted to be due to Plaintiff's osteoarthritis in her knees and obesity. *Id.* Dr. Durfor found Plaintiff had

no manipulative or visual limitations. *Id*. Dr. Durfor went on to assess Plaintiff's past work relevant work, finding Plaintiff had the residual functional capacity to complete the job of telemarketer as she had actually performed it in the past. *Id*. at 55. Dr. Durfor thus recommended Plaintiff be found not disabled. *Id*.

State agency consultant Dr. Brian Harper ("Dr. Harper") also completed a Disability Determination Explanation related to Plaintiff's claims in September 2013. *Id*. at 68-87. Dr. Harper's conclusions, in his September 20, 2013 assessment, were identical to those reached by Dr. Durfor. *Id*. at 71-76.

### C. Hearing Testimony

#### 1. Plaintiff's Testimony

At hearing, Plaintiff testified that she stopped working in November 2012, at which time she was experiencing constant pain in her knees [TR at 38-39]. She explained that the pain is lower in the morning, but greater through the rest of the day. *Id*. at 39. For most of the day she would rate the pain at a seven or eight on a scale of ten. *Id*. Plaintiff further explained that she lays down one to three hours to get the pressure off her knees, and because she experiences no pain laying down. *Id*. She also stated that the stress of getting up or down "just makes her want to cry." *Id*. Plaintiff went on to explain that while seated, she constantly rubs her knees because she experiences pain even then. *Id*. at 39. She stated that she can sit from 30-45 minutes in a padded chair if she rubs her knees afterwards, and if the chair is not padded, she can sit for about 15-20 minutes while rubbing her knees before she must get up and move. *Id*. Plaintiff reported that when standing in one spot, she can stand for about three minutes at most because her knees hurt so badly. *Id*. at 40. If she is walking she is able to walk about the length of the house, but afterwards she must immediately go sit down. *Id*. Plaintiff indicated that she cannot squat down

to pick something off the floor.  *Id.*  She further stated that, although she does not use a cane, when she is walking she sometimes will use the wall for balance.  *Id.* at 41.  Besides resting and elevating her legs, Plaintiff stated that there is not anything she has found that is effective in alleviating the pain in her knees.  *Id.*

### 2.  *Vocational Expert Testimony*

Lakedra L. Parker ("VE") testified as a vocational expert at the hearing [TR at 46].  The ALJ asked the VE to describe Plaintiff's work history, and the VE responded that Plaintiff has past relevant work experience as an admitting clerk (DOT 205.362-018, sedentary, semi-skilled, SVP of 4), a switchboard operator (DOT 235.662-022, sedentary, semi-skilled, SVP of 3), and a telemarketer (DOT 299.357-014, sedentary, semi-skilled, SVP of 3).  *Id.*  The ALJ asked no further questions of the VE, permitting counsel for Plaintiff to cross examine the VE, after noting "if [Plaintiff] get[s] past step four you're – you know, it's disabled."  *Id*. at 46.  Counsel for Plaintiff then asked the VE if the Plaintiff were required to take breaks from one to three hours a day, in addition to normal work breaks, whether Plaintiff could sustain her past work.  *Id.*  The VE stated that she would not be able to sustain her past work or any other work for that matter.  *Id.* at 46-47.

## II.    FINDINGS OF THE ALJ

### A.  *Sequential Evaluation Process*

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability.  20 C.F.R. § 404.1520.  First, a claimant who is engaged in substantial gainful employment at the time of his disability claim is not disabled.  20 C.F.R. § 404.1520(b).  Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience.  20 C.F.R. § 404.1520(c).

Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work. 20 C.F.R. § 404.1520(e). Finally, a claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1520(f). Under the first four steps of the analysis, the burden lies with the claimant to prove disability and at the last step the burden shifts to the Commissioner. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. *Id.*

### B. ALJ's Disability Determination

After hearing testimony and conducting a review of the facts of Plaintiff's case, the ALJ made the following sequential evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity [TR at 23]. At step two, the ALJ determined that Plaintiff had the following severe impairments: obstructive sleep apnea, COPD, degenerative joint disease of the knees, degenerative disc disease, obesity, cardiomegaly, and osteoarthritis of the knees. *Id.* At step three, the ALJ found that these impairments, singly or in combination, did not satisfy the requirements for a presumptive finding of disability under the Act. *Id.* At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of sedentary work. *Id.* at 24. Continuing the step four analysis, the ALJ then determined that Plaintiff was able to perform her past relevant work as an admitting clerk, switch board operator, and/or telemarketer *Id.* at 26. Accordingly, the ALJ concluded Plaintiff was not disabled from November 26, 2012 through October 17, 2014, the date of the ALJ's decision. *Id.* at 27.

**STANDARD OF REVIEW**

In an appeal under § 405(g), this Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). Additionally, any conflicts in the evidence, including the medical evidence, are resolved by the ALJ, not the reviewing court. *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985). To reiterate, when determining the propriety of a decision of "not disabled," the court's function is to ascertain whether the record considered as a whole contains substantial evidence that supports the final decision of the Commissioner, as trier of fact. The court weighs four elements of proof to decide if there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)).

The legal standard for determining disability under Titles II and XVI of the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook*, 750 F.2d at 393. "Substantial gainful activity" is determined by a five-step sequential evaluation process, as described above. 20 C.F.R. § 404.1520(a)(4).

# ANALYSIS

Upon review of Plaintiff's and Commissioner's briefs, the Court discerns the following issues on appeal: whether the ALJ's determination of Plaintiff's RFC is supported by substantial evidence, including specifically (1) whether the ALJ gave proper consideration to Plaintiff's examining physician Dr. Newberry, (2) whether any medical evidence supports that Plaintiff is capable of the full range of sedentary activity, and (3) whether the ALJ failed to perform a function-by-function assessment.

### *ALJ's Failure to Give Examining Physician Proper Weight*

The Court begins with Plaintiff's argument that the ALJ failed to properly weigh the medical opinion of her examining physician Dr. Newberry. The weight to be given to medical opinions in Social Security cases depends, in large part, on whether the opinions are proffered by treating, examining, or nonexamining physicians. In the Fifth Circuit, the treating physician rule provides that the opinion of a claimant's treating physician on a medical issue (i.e., the nature and severity of a patient's impairment) is entitled to great weight. *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000); *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala,* 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied,* 514 U.S. 1120 (1995). A treating physician's opinion regarding the severity and nature of a plaintiff's impairment must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with. . . other substantial evidence." *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)).[1] The opinion of an examining physician is,

---

[1] 20 C.F.R. § 404.1527 has been revised several times since the Fifth Circuit's opinions in *Newton* and in *Martinez* and those courts' reference to subsection (d)(2) refer to the factors now present at subsection (c)(2) of 20 C.F.R. § 404.1527. *Compare* 20 C.F.R. § 404.1527 (effective to July 31, 2006) *with* 20 C.F.R. § 404.1527 (Aug. 24, 2012). The Court further notes that for all claims filed on or after March 27, 2017, the Rules in § 404.1520c (not 1527) shall apply.

in turn, entitled to greater weight than the opinion of a nonexamining physician; and, when an examining physician's opinion is contradicted by another doctor, it also may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. *See Bradley v. Bowen*, 809 F. 2d 1054, 1057 (5th Cir. 1987); *see also Cline v. Astrue*, 577 F. Supp. 2d 835, 845 (N.D. Tex. 2008).

To that end, SSA Regulations provide that the ALJ "will always give good reasons in [a] notice of determination or decision for the weight [the ALJ gives the claimant's] treating source's opinion," and also list the factors an ALJ must consider to assess the weight to be given to the opinion of a treating physician when the ALJ determines that such opinion is not entitled to "controlling weight." *See* 20 C.F.R. § 404.1527(c)(2). As stated in *Newton*:

> Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status. [T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. The treating physician's opinions are not conclusive. The opinions may be assigned little or no weight when good cause is shown. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.

*Newton*, 209 F.3d at 455-56 (internal citations and quotation marks omitted).

Thus, unless controlling weight is given to a treating physician's opinion, the SSA regulations specifically require consideration of the following factors set forth in 20 C.F.R. § 404.1527(c)(2) (hereinafter "the relevant factors") in deciding the weight given to each medical opinion: (1) length of treatment relationship and frequency of examination; (2) nature and extent of treatment relationship; (3) supportability of the medical opinion; (4) consistency; (5) specialization of the physician; and (6) other factors. *See* 20 C.F.R. § 404.1527(c)(2) (listing factors to consider); *Newton*, 209 F.3d at 456 (stating the Fifth Circuit requires consideration of

each of the 20 C.F.R. § 404.1527(c)(2) factors); *Boyd v. Barnhart*, 258 F. Supp. 2d 1013, 1020 (E.D. Miss. Mar. 26, 2003) (unless a treating source's opinion is given controlling weight, the ALJ must explain the weight given to the opinions of other physicians). The Court must also consider if the error is a harmless error. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

Here, the ALJ found that Plaintiff has the RFC to perform the "full range" of sedentary work as defined in 20 C.F.R. 416.967(a).[2] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. Unskilled sedentary work also involved other activities, classified as "nonexertional," such as capabilities for seeing, manipulation, and understanding remembering, and carrying out simple instructions. *Id.*; SSR 96-9p, 1996 WL 374185, at *3. In making his RFC finding, Plaintiff argues that the ALJ failed to explain the weight (if any) given to Dr. Newberry's opinions, and alleges that, had proper weight been accorded to the postural, manipulative, and/or visual limitations Dr. Newberry found, the ALJ would have concluded that Plaintiff is not capable of the full range of sedentary work [Dkt. 14 at 7-10]. Specifically, Plaintiff asserts that the ALJ failed to include in the RFC the limitations described by Dr. Newberry that Plaintiff "could only occasionally crouch and squat, could frequently reach, handle, feel, grasp, and perform fine manipulation, and might have visual

---

[2] Residual functional capacity (RFC) is the most an individual can still do despite his or her limitations. SSR 96-8p, 1996 WL 374184, at *1 (assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis). The responsibility to determine Plaintiff's RFC belongs to the ALJ. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making this determination, the ALJ must consider all the record evidence and determine the Plaintiff's abilities despite her limitations. *Martinez*, 64 F.3d at 176.

limitations. . . ” *Id*. at 9. Plaintiff contends these errors resulted in an inaccurate RFC, prejudicing the outcome of the ALJ's analysis.

At step four, the ALJ's Notice of Determination references the contents of Dr. Newberry's June 29, 2013 examination, contained in Exhibit 2F [TR at 25-26, 301-11]. The ALJ summarizes:

> During a consultative examination on June 29, 2013, the claimant was in no acute distress. She was noted to be morbidly obese at 5 feet 4 inches tall with a weight of 304 pounds, giving her a body mass index of 52.2. Her blood pressure reading was 181/91. Her lungs were clear. There was 2+ pretibial edema with obvious vascular congestion and statis noted. Her gait was described as slow and steady. and [sic] she exhibited medial tenderness of the knees bilaterally. Although there was medial tenderness noted in the exam of the knees, there was no evidence of any swelling or effusion seen. She was able to lift, carry, and handle light objects. She was able to rise from a sitting position without assistance and had no difficulty getting up and down from the exam table. She was able to walk on heels and toes with moderate difficulty but tandem walking was normal. She could stand but no [sic] hop on either foot bilaterally. She was able to dress and undress adequately well. X-rays of her right knee showed severe osteoarthritic degenerative changes with soft tissue diffuse inflammatory changes (nonspecific). A chest x-ray revealed no acute cardiopulmonary process seen, cardiomegaly with left ventricle prominence, and thoracic spine chronic degenerative changes/spondylosis. The probable diagnoses included history of chronic obstructive pulmonary disease, history of cataract, history of sleep apnea, hypertension, osteoarthritis, both knees, and morbid obesity. Exhibit 2F. Based on the examination, Robert Newberry, M.D., felt the claimant's pain in her knees were [sic] as a result of her excessive weight. He stated the claimant could sit normally in an 8 hour workday with normal breaks, mild limitations with standing and walking due to obesity and knee problems, mild limitations with lifting and carrying weight due to knee problems. She was limited to no more than bending and stooping frequently, and crouching and squatting occasionally due to obesity and osteoarthritis. She could perform reaching, handling, feeling, grasping, and fingering frequently. It was noted that the claimant did not need an assistive device with regards to short and long distances and uneven terrain.

*Id*. at 25. The ALJ's summary accurately lists each of the non-exertional limitations described by Dr. Newberry, except for the alleged visual limitations, which are omitted. However, the residual functional capacity itself does not include any of these non-exertional limitations. Indeed, in his Notice of Decision, the ALJ did not assign or describe the weight to be given to Dr. Newberry's opinions, nor did the ALJ engage in any analysis of the impact of Dr. Newberry's medical opinion

or give any reasons for excluding from Plaintiff's RFC the findings of Dr. Newberry related to Plaintiff's inability to crouch or squat more than occasionally, only frequently reach, handle, feel, grasp, and perform fine manipulation, and the potential visual limitations caused by her cataract.

The Commissioner responds that the ALJ thoroughly discussed Dr. Newberry's opinions; and that the RFC adopted contemplates each of the limitations stated by Dr. Newberry (as his opinion stated limitations that are part of the full range of sedentary work) [Dkt. 15 at 4-6]. Stated another way, the Commissioner contends that Dr. Newberry's limitations do not detract from the ALJ's RFC finding, and thus any failure to include them is harmless error, as those activities are not usually required in sedentary work. *Id*; s*ee* SSR 96-9p, 1996 WL 374185, at *7 ("Postural limitations or restrictions related to such activities as climbing ladders, ropes or scaffolds, balancing, kneeling, crouching, or crawling . . . are not usually required in sedentary work.").

While the ALJ could have stated this rationale in assigning weight to Dr. Newberry's opinions, the ALJ did not. When an ALJ's decision is not fully favorable, the ALJ's "[N]otice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *1, 5.[3] The regulation further states that the notice of determination must contain an explanation, albeit brief, of the weight given to the treating source's medical opinion. SSR 96-2p. The regulations make clear that opinions by examining physicians must be similarly considered; and, "fundamentally, [t]he ALJ cannot reject a medical opinion without explanation'." *Kneeland v. Berryhill*, -- F. 3d --, 2017 WL 927781, at *9 (5th Cir. Mar. 8, 2017). The ALJ therefore committed

---

[3] While the Social Security Administration's rulings are not binding on the Court, the Fifth Circuit has frequently relied upon the rulings in evaluating ALJ's decisions. *Myers v. Apfel*, 238 F.3d 617 (5th Cir. 2001).

error when he failed to discuss what weight he gave to Dr. Newberry's opinions, and when he gave no explanation for excluding several of the non-exertional limitations from the RFC. *Kneeland*, 2017 WL 927781, at *9-10 (finding ALJ erred by not giving examining physician opinion any weight and that fundamentally an ALJ cannot reject a medical opinion without an explanation); *Stoll v. Colvin*, No. 3:14-CV-1239, 2015 WL 233312, at *5 (N.D. Tex. Jan. 16, 2015) ("Even in the case of a non-treating physician. . . the ALJ may not ignore medical opinions and must explain in his decision the weight that the ALJ gives to those opinions"); *Nicaragua v. Colvin*, No. 3:12-CV-2109, 2013 WL 4647698, at *5-7 (N.D. Tex. Aug. 29, 2013) (remanding where ALJ failed to explain what weight he gave to examining physician's opinion, which conflicted with ALJ findings); *Singleton v. Astrue*, No. 3:11-CV-2332, 2013 WL 460066, at *3-6 (N.D. Tex. Feb. 7, 2013) (remanding where ALJ failed to explain weight given to examining physician). Moreover, the Court notes, that while Commissioner's argument accounts for the postural limitations stated by Dr. Newberry (i.e., limitations on crouching and squatting), it does not address the remaining limitations (manipulative and visual). The SSA Regulations advise that the "RFC assessment must include a narrative that shows the presence and degree of any specific limitations and restrictions, as well as an explanation of how the evidence in the file was considered in the assessment. An accurate accounting of an individual's abilities, limitations, and restrictions is necessary to determine the extent of erosion of the occupational base, the types of sedentary occupations an individual might still be able to do, and whether it will be necessary to make use of a vocational resource." SSR 96-9p, 1996 WL 374185, at *6. In this case, the evidence before the ALJ showed that Plaintiff had non-exertional limitations that, at least in some respects, could affect her ability to perform a full range of sedentary work. *See id*. at *8 (discussing impact of manipulative and visual limitations on erosion of unskilled sedentary occupational base). Given this evidence, the

ALJ could have reached a different disability determination had he fully developed the record regarding the effects Plaintiff's non-exertional limitations had on her ability to work. Because "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision," the Court may not decide what the ALJ would have done if he had analyzed Dr. Newberry's assessments. *Newton*, 209 F.3d at 455 (5th Cir. 2000). Therefore, the case should be remanded for further review of and an explanation of the weight given to Dr. Newberry's opinions.[4]

## CONCLUSION

For the foregoing reasons, the Court finds that the decision to deny disability benefits to Plaintiff is **REMANDED** to the Commissioner for further deliberation in accordance with this decision.

**SIGNED this 14th day of March, 2017.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE

---

[4] Because the Court has determined that remand is appropriate, it does not reach Plaintiff's remaining issues on appeal. Plaintiff may pursue any arguments related to such claims of error in the administrative proceeedings on remand.